UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LISA LEEHANS | * | CIVIL ACTION NO. 18-6014 |
| | * | |
| VERSUS | * | SECTION: "J"(1) |
| | * | |
| ANDREW SAUL, ACTING | * | JUDGE CARL J. BARBIER |
| COMMISSIONER OF THE SOCIAL | * | |
| SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

REPORT AND RECOMMENDATION

The plaintiff, Lisa Leehans, seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI[1] of the Act, 42 U.S.C. §§ 423, 1381. The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc.14) be GRANTED in part and DENIED in part; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 19) be DENIED. The matter should be remanded to the ALJ for further proceedings as recommended herein.

**Procedural Background**

Ms. Leehans applied for DIB on July 7, 2015, and for SSI on August 1, 2015,[2] asserting in both applications a disability onset date of January 15, 2011. She alleged the following illnesses, injuries, or conditions:  bipolar.  On December 10, 2015, her claims were denied by the state

---

[1] As discussed further below, although Ms. Leehans' complaint appears to challenge the ALJ's decision denying her claim for both DIB and SSI, she now seems to challenge only the ALJ's decision on her DIB application.

[2] As noted below, the record before the court does not include Ms. Leehans' application for SSI, but the state agency's disability determination explanation report state that Ms. Leehans filed her application for SSI on August 1, 2015.

agency. The Disability Determination Explanations on her DIB application concluded that "The medical evidence shows you had a history of mental problems. The evidence was not sufficient to show your condition was totally disabling prior to 03 / 31 / 15, when you were last insured for these benefits." R. at 115. The Disability Determination Explanations on her SSI application concluded that "[t]he medical evidence shows your overall condition restricts the types of jobs you can perform, but is not totally disabling. You can perform most normal activities. You can get along with others and follow simple directions." R. at 106.

Ms. Leehans obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 15, 2017. At the hearing, Ms. Leehans noted that there was a prior final ALJ decision dated January 13, 2014 and requested that the alleged disability onset date be amended to March 12, 2014, the date on which Ms. Leehans was hospitalized at the Greenbriar hospital. The motion to amend the alleged onset date was granted. On June 9, 2017, the ALJ issued an adverse decision. Ms. Leehans timely appealed to the Appeals Council, which denied review on April 12, 2018.

On June 16, 2018, Ms. Leehans filed a Complaint in federal court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative record. (Rec. Docs. 10, 11). The parties filed cross-motions for summary judgment. (Rec. Docs. 14,) 19. Ms. Leehans is represented by counsel.

**<u>Evidence in the Record</u>**

At the hearing before the ALJ in March 2017, Ms. Leehans testified that her most recent psychiatric hospitalization was in March 2014. R. at 43. She testified that since that time she had been on medication and had been receiving treatment through the St. Tammany Community Health Center. R. at 43-44. She testified that she had no side effects from her medication. R. at 45, 47.

However, she later testified that the medicine makes her "real zombified." R. at 47. She testified

that even with the medication she still hears voices about every other day. R. at 45. She testified

that she felt her condition was getting worse. R. at 48. She testified that she did not think she could

work because the medication does not always work and she was afraid she would not be able to

multitask. R. at 50.   When asked if she thought she could work if she did not have to multitask,

she said "no" because her medication makes her feel like she is in another world. R. at 60. Upon

further questioning, she explained that it made her feel sleepy and she thinks about being

somewhere else. R. at 61. She said that about once a week, for 15-20 minutes, she wishes to be in

Mexico. Id.

Ms. Leehans testified that about 3 or 4 days a week she just wants to stay in bed. R. at 51.

She later testified she feels that way every day. R. at 52. Ms. Leehans testified that she had not had

homicidal thoughts since her March 2014 hospitalization. R. at 56. She testified that she lives with

her husband and daughter and that she gets along well with her daughter and "pretty good" with

her husband. R. at 56. She testified that she takes a shower and gets dressed on her own every day.

R. at 58.

At the hearing, Ms. Leehans amended her disability onset date to March 12, 2014, and the

court begins its summary of the medical records on that date.[3] Ms. Leehans was hospitalized at

Greenbriar Behavioral Hospital from March 12, 2014, through March 20, 2014 on referral from

Slidell Memorial Hospital "on a [physician's emergency commitment] secondary to suicidal

ideations with a plan." R. at 503. Ms. Leehans reported that she had recently started having

auditory hallucinations, that she was feeling paranoid, was experiencing low energy, and was

---

[3] As discussed further below, Ms. Leehans is only challenging the ALJ's decision to deny her DIB application. Because the relevant period for her DIB application is March 12, 2014 through March 31, 2015, the court's summary of the evidence focuses on evidence during or shortly after that period.

having intermittent crying and suicidal ideations. Id.  She reported spending money impulsively, worrying excessively with tension and irritability, and that she had been charged with theft of more than $500. Id.  Ms. Leehans was placed on Prozac, Haldol, and Vistril. Id. At discharge she was tolerating her medication well, denied suicidal or homicidal ideations, reported an improvement in her depression and anxiety, and reported no auditory of visual hallucinations. Id.  She was diagnosed with schizoaffective disorder, depressed with a Global Assessment of Functioning ("GAF") score of 50. Id.  She had been assessed with a GAF of 27 upon admission. R. at 508.

On July 18, 2014, Ms. Leehans presented at the NMCH Emergency Department reporting hearing voices telling her to rob a store and hurt herself. R. at 336. She noted a recent medication change to Risperdal on July 10, 2014. R. at 336-37. She was noted to be negative for suicidal ideas, confusion, sleep disturbance, and self-injury. R. at 337. Dr. John B. Seymour noted that Ms. Leehans did not appear to be responding to internal stimuli and did not appear to be delusional. R. at. 383. She was discharged later that day. R. at 336.

Ms. Leehans again presented at the NMCH Emergency Department on August 27, 2014 reporting suicidal thoughts. R. at 348. She reported multiple recent stressors. R. at 349. She reported that she had not seen her psychiatrist since discharge (presumably from her July 18, 2014, emergency department encounter) and that she was compliant with her medication. Id.  Upon examination, Dr. Michael Knisley noted Ms. Leehans had a restricted affect, depressed mood, but fair insight. R. at 351. She was diagnosed with bipolar disorder. R. at 352. When she spoke with registered nurse Kenitra Payne, Ms. Leehans reported being under a lot of stress and that she was going to a psychiatric facility that would help her. Id.  Nurse Payne noted that Ms. Leehans had a pleasant mood and was calm and cooperative. Id.  A psychiatric placement was sought, and on August 28, 2014, the NMCH records indicate that Ms. Leehans was transferred to Northlake

Behavioral Hospital for psychiatric evaluation and treatment. R. at 353-55. Although neither party has addressed their absence, it appears there are no records of treatment at the Northlake Behavioral Hospital. There may not have been an inpatient hospitalization at that time. Ms. Leehans testified at the hearing before the ALJ in March 2017 that the last time she had been hospitalized was in March 2014. R. at 43.

There do not appear to be any medical records from September 2014 through December 2014.

Ms. Leehans presented at the Slidell Memorial Hospital on January 1, 2015 complaining of left ear pain. R. at 436. A physical examination was performed, but no notes regarding her psychiatric condition were made.

On January 15, 2015, she visited the St. Tammany Community Health Center and reported hearing voices and having thoughts that people are out to get her for no reason. R. at 530. She reported chest pain, anxiety and worry, impulsivity, and irritability. Id. Her attitude was noted to be guarded, her mood was noted to be dysthymic. Id. She was nervous and fidgety. Id. But Ms. Leehans was also noted to be non-psychotic. R. at 531. Her thought flow was coherent and rational and her attention demonstrated no abnormalities. Id. She had no suicidal or homicidal ideation. Id. Invega and lithium were continued and she was prescribed Risperdal. Id.

Ms. Leehans again presented at the Slidell Memorial Hospital on February 11, 2015 with ear pain. R. at 454. Her behavior, mood, and affect were noted to be within normal limits. R. at 456. She was awake and alert with orientation to person, place and time. Id.

On April 21, 2015, she visited the St. Tammany Community Health Center and reported that she was hearing voices again. R. at 523. She denied a suicidal plan. Id. Her thinking was

vague at times and tangential, her mood was worrisome and her thought content was of helplessness. Id.

Ms. Leehans presented at the Slidell Memorial Hospital on May 2, 2015 with a sore throat. R. at 493. Her behavior, mood, and affect were noted to be within normal limits. Id. She was awake and alert with orientation to person, place and time. Id.

In August 2015, Ms. Leehans filled out a Function Report and reported feeling "the shakes" because of her medication and feeling like "everybody is watching everything I do." R. at 211. She reported that her daily activities included watching TV, doing housework, washing clothes, and taking walks to calm her nerves. R. at 212. She reported going shopping for groceries or clothing every week for about two hours. R. at 214. She reported that she cannot talk intimately with others, cannot remember everything she is supposed to, cannot concentrate enough to complete, understand, and follow instructions. R. at 215.

In November 2015, the consultative examiner Dr. Shah conducted a medical status examination and found Ms. Leehans' affect restricted and mostly euthymic, her speech normal, and her thought process concrete. R. at 498. For memory and understanding, she was able to recall three objects out of three at the end of five minutes and was able to repeat seven digits forward and five digits backward correctly. Id. For concentration and attention, she was able to do serial 3s subtractions from 20. Id. She was able to interpret the proverb "spilled milk," her insight was fair, and her judgment was normal (if she found a stamped envelope in the street she would put it in a mailbox). Id. Dr. Shah concluded that Ms. Leehans "did well with cognitive tests on mental status examination today." R. at 499. Dr. Shah noted that Ms. Leehans could manage personal hygiene daily on her own and manage some cooking, cleaning, and doing laundry and that she gets help from her spouse with shopping. Id. Dr. Shah noted that Ms. Leehans reported avoiding

socialization and crowds in general. Id.  Dr. Shah diagnosed Ms. Leehans with Bipolar 1 Disorder

MRE [Most Recent Episode] Mixed with Psychosis in Partial Remission. Id.

### Decision of the Administrative Law Judge

The ALJ found that Ms. Leehans meets the insured status requirements of the Act through

March 31, 2015. The ALJ found that Ms. Leehans has not engaged in substantial gainful activity

since March 12, 2014, the amended alleged onset date. The ALJ determined that Ms. Leehans has

the following severe impairments: bipolar disorder, schizoaffective disorder with psychosis and

depression, and anxiety disorder. However, the ALJ determined that Ms. Leehans does not have

an impairment or combination of impairments that meet or medically equals the severity of one of

the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ considered the criteria

in listings 12.03, 12.04, and 12.06. The ALJ then found that Ms. Leehans has the residual

functional capacity to perform a full range of work at all exertional levels but with the following

non-exertional limitations: performance of tasks commensurate with an SVP level of two or less,

only occasional interactions with co-workers and supervisors, no interaction with the public, and

only work not requiring fast-paced production quotas such as those quotas present in moving

assembly work or lunchtime work in a fast food establishment. The ALJ determined that Ms.

Leehans was unable to perform any of her past relevant work. The ALJ found that Ms. Leehans

was 38 years old, which is defined as a "younger individual," on the alleged disability onset date.

The ALJ determined that Ms. Leehans has at least a high school education and is able to

communicate in English. The ALJ found that transferability of job skills was not material to the

determination of disability because using the Medical-Vocational Rules as a framework supports

a finding that Ms. Leehans is "not disabled" whether or not she has transferable job skills. Relying

on the testimony of a vocational expert, the ALJ determined that considering Ms. Leehans' age,

education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Leehans can perform. Thus, the ALJ concluded that Ms. Leehans has not been under a disability as defined by the Act from March 12, 2014, through the date of decision.

## Statement of Issues on Appeal

Issue No. 1.    Are both the ALJ's decision on Ms. Leehans' SSI application and DIB application under review?

Issue No. 1.    Did the ALJ err by relying on her own medical opinions rather than the opinions of medical experts?

Issue No. 2.    Does substantial evidence support the decision of the ALJ?

## Analysis

### I.  Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence is more than "a mere scintilla," but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the issues de novo, or substitute its judgment for the Commissioner's.  Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v.

Oklahoma, 503 U.S. 91, 113 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

## II.    Entitlement to Benefits under the Act.

To be considered disabled under the Act, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the regulations promulgated under the Act, the Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled. See 20 C.F.R. § 404.1520(a)(4). At each step, if the Commissioner determines that an individual is or is not disabled (depending on the step), her decision is made on that basis and she does not proceed to the next step. Id. Following these same five steps, the ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

Perez, 415 F.3d at 461. The burden of proof is on the claimant in steps one through four, and then at step five, the Commissioner must "show that the claimant can perform other substantial work in the national economy." Id. Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding. Id. An assessment of the claimant's residual functional capacity

is used in steps four and five to determine the claimant's ability to perform his past work or any other type of work. Id.

I.    **Plaintiff's Appeal**.

*Issue No. 1.    Are both the ALJ's decision on Ms. Leehans' SSI application and DIB application under review?*

Although not described as an assignment of error, Ms. Leehans states that the record before the court contains only her Title II application for DIB and not a Title XVI application for SSI benefits. Ms. Leehans does not assert that she did not file an application for SSI benefits on August 1, 2015, as recited by the ALJ and as reported in the state agency's disability determination explanation report for her Title II application for SSI. Instead, she makes the point that the relevant period for determining disability as to her Title XVI application for DIB is between the amended disability onset date of March 15, 2014, and March 31, 2015, the date she was last insured for DIB benefits. She notes that for the purpose of her SSI claim,[4] the relevant time period for determining whether disability is established would be any time from March 15, 2014, through June 14, 2017, the date of the ALJ's decision. Instead, her substantive arguments focus on the period between March 15, 2014, and March 31, 2015, and are labeled as challenges to the ALJ's Title II decision.

The Commissioner submits that Ms. Leehans is now suggesting that she did not file an SSI claim so that the ALJ's decision will be determined to apply only to her DIB claim. If that were the case, because Ms. Leehans only met the insured status requirements for DIB through March 31, 2015, then Ms. Leehans would be able to file a new application for SSI with an alleged onset date after March 31, 2015. Instead, however, the Commissioner insists that the ALJ's decision concerns both her application for DIB and SSI and extends through June 14, 2017, the date of the

---

[4] She adds a caveat, "[a]ssuming the existence of a Title XVI claim."

ALJ's decision, and any new application for SSI would have to be filed with an alleged onset date thereafter.

The court notes that although the record is missing Ms. Leehans' SSI application, the record contains a disability determination transmittal and disability determination explanation for both Ms. Leehans' DIB and SSI applications. R. at 95-116. The record contains Ms. Leehans' request for a hearing before the ALJ to review the state agency's denial of her SSI application.[5] R. at 127. The ALJ clearly considered both Ms. Leehans' application for DIB and SSI by referencing both in her decision. R. at 16. Importantly, in appealing the ALJ's decision to the appeals council and in filing her complaint in this court, Ms. Leehans did not raise as an error that a decision had been made on an application she did not file. In filing this lawsuit, she described the caption of the case for which she sought judicial review as:

<u>In the case of:</u>                                     <u>Claim for Social Security</u>

Lisa Leehans                                       Disability Insurance Benefits and

                                                   Supplemental Security Income

(Rec. Doc. 1). Even now, Ms. Leehans does not claim that she did not file an application for SSI on August 1, 2015, as noted in the disability determination explanation for her SSI application. R. at 97.

It appears the only reasonable conclusion is that Ms. Leehans filed an application for both DIB and SSI benefits and that both applications were denied by the state agency and then by the ALJ on review. Further, it is clear from her motion for summary judgment that she is now only challenging the ALJ's decision on her Title II application for DIB. She explicitly limits her assignments of error to the Title II decision and raises no errors with respect to the ALJ's decision

---

[5] The record is missing Ms. Leehans' request for a hearing to review the denial of her DIB application by the state agency.

on her SSI application. Accordingly, Ms. Leehans has abandoned any claim that the ALJ improperly determined that she was not entitled to SSI benefits because she was not disabled during the relevant period. The court now addresses whether the ALJ erred in deciding Ms. Leehans' DIB application.

Issue No. 2    *Did the ALJ err by relying on her own medical opinions rather than the opinions of medical experts?*

Ms. Leehans argues that the ALJ relied on her own medical opinions rather than the opinions of medical experts. However, she does not point to a medical opinion that the ALJ improperly discounted. She argues that the ALJ cannot derive a claimant's residual functional capacity based solely on the medical record and insists that "[m]edical expert opinions are required for a legally valid assessment to be made." Without further explanation, Ms. Leehans cites Williams v. Astrue, 355 F. App'x 828, 831–32 (5th Cir. 2009), and Ripley v. Chater, 67 F.3d 552, 557–58 (5th Cir. 1995). In Williams, the ALJ failed to give controlling weight to the opinions of three treating physicians, which supported the limitations claimed by the claimant. 355 F. App'x at 829-31. The United States Court of Appeals for the Fifth Circuit determined that even if the ALJ was entitled to do so, there was "still *no* evidence" to support the ALJ's determination that the claimant could stand or walk for six hours in an eight-hour work day. Id. (emphasis in original). The court of appeals found the evidence did not support the ALJ's finding regarding the claimant's ability to walk because the claimant's physical therapy discharge summary directly contradicted the ALJ's finding. The court also concluded that the ALJ had impermissibly "relied on his own medical opinions as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring.'" Id. at 831–32.

In Ripley, the claimant argued that the ALJ had improperly concluded that he was capable of performing sedentary work although there was no medical testimony supporting this conclusion.

67 F.3d at 557. The court of appeals explained that "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits," but that if the ALJ fails to satisfy this duty, reversal "is appropriate only if the applicant shows that he was prejudiced." Id.  The court noted that while the ALJ should usually request a medical source statement, "[t]he absence of such a statement, however, does not, in itself, make the record incomplete." Id.  The question is whether the ALJ's decision "is supported by substantial evidence in the existing record." Id.  The court of appeals in Ripley found that the ALJ's decision was not supported by substantial evidence, noting that record contained a "vast amount of medical evidence establishing that [the claimant] has a problem with his back," but the record did not establish the effect of the claimant's condition on his ability to work other than his own testimony. Id.  The court noted that the only evidence of the  claimant's ability to work was his own testimony that he was unable to sit or stand for any length of time without experiencing a great deal of pain. Id.  n. 28. The court remanded with instructions that the ALJ obtain a report from the claimant's treating physician regarding the effects of the claimant's back condition on his ability to work. Id.  at 557–58.

Without specifics, Ms. Leehans insists that the ALJ's method violated the rules set forth in Williams and Ripley. She may be arguing that, as in Williams, there is no evidence to support the ALJ's assessment of Ms. Leehans' RFC and that as a result, the ALJ should be reversed. She may be arguing that, as in Ripley, this court should remand and require the ALJ to obtain a report from Ms. Leehan's psychiatrist regarding the effect of her mental conditions on her ability to work.

The Commissioner argues that the Williams and Ripley cases are distinguishable because in those cases, there was no evidence to support the ALJ's decision. In contrast, here, the Commissioner argues that substantial evidence supports the ALJ's decision.

The court agrees that the <u>Williams</u> case is distinguishable because in that case the opinions of three treating physicians supported the limitations alleged by the claimant and the court found no evidence to support the ALJ's determination of the claimant's ability to stand and walk. Here, there are no treating physician opinions that controvert the ALJ's conclusions. Without such opinions, the Fifth Circuit's guidance in <u>Ripley</u> is instructive. Despite Ms. Leehans' argument that the absence of a medical opinion requires reversal, <u>Ripley</u> makes clear that the absence of a medical source statement "does not, in itself, make the record incomplete." 67 F.3d at 557. In such cases, the court must determine whether the ALJ's decision "is supported by substantial evidence in the existing record." <u>Id.</u> The court now turns to that issue.

*Issue No. 3 Does substantial evidence support the decision of the ALJ?*

    a. *Parties' Arguments*

Addressing only her DIB application and her date last insured of March 31, 2015, Ms. Leehans cites records of her hospitalization at Greenbriar Behavioral Hospital from March 12, 2014, through March 20, 2014. She cites her July 2014 emergency room records when she reported hearing voices telling her to rob a store and hurt herself. She also cites her August 2014 emergency room visit and describes this as a PEC hospitalization resulting in transfer to another inpatient facility, although there are no records of an inpatient hospitalization and, as noted above, Ms. Leehans testified that she had last been hospitalized in March 2014 without mention of an August 2014 hospitalization. Ms. Leehans also cites her January 15, 2015, visit to the St. Tammany Community Health Center where she reported hearing voices and having thoughts that people are out to get her for no reason. Ms. Leehans' attitude was abnormal and guarded, her mood was dysthymic, and she was nervous/fidgety. Ms. Leehans further cites her April 21, 2015, visit to the St. Tammany Community Health Center when she reported she was hearing voices again, her

thinking was vague at times and tangential, her mood was worrisome and her thought content was of helplessness.

Ms. Leehans points out that Dr. Shah, the consultative examiner, did not express an opinion on Ms. Leehans' ability to maintain employment. Ms. Leehans also says that the state agency medical expert[6] indicated no opinion because there was insufficient evidence to evaluate the claim. Indeed, in considering Ms. Leehans' DIB application and assessing the severity of Ms. Leehans' impairments under listing 12.04, the state agency expert, Judith Levy, Ph.D., M.P., noted "insufficient evidence" next to each of the paragraph B criteria and in assessing the presence of paragraph C criteria. R. at 114. And under additional explanations, Dr. Levy noted that there was "insufficient evidence to evaluate functioning prior to" the date last insured. Id.

Ms. Leehans argues that in the case of mental impairments, the 12-month durational requirement for a finding of disability can be met even if a claimant "'is able to work sporadically at a series of jobs,' so long as 'a claimant has presented medical evidence which indicates that his

---

[6] Presumably because she is not challenging the ALJ's denial of her SSI application, Ms. Leehans ignores Dr. Levy's assessment of Ms. Leehans' SSI claim. The Commissioner does not cite or address Dr. Levy's assessment of Ms. Leehans' SSI claim either. There, in assessing the severity of her symptoms under listing 12.04, Dr. Levy considered each of the paragraph B criteria and determined that Ms. Leehans had mild restrictions on activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. R. at 103. Dr. Levy determined that the evidence did not establish the presence of "C" criteria. Id.  Under additional explanations, Dr. Levy referenced the psychological consultative examination and noted that Ms. Leehans was "doing better" on her current medications of Risperdal and lithium, that she is sleeping well and has good activities of daily living, that she was receiving treatment at the Community Health Center, that she tried to work in the past but gets aggravated with people and loses her cool with arguments and confrontation, and that she did well on her mental status examination. Id.

Although she did not do so in assessing Ms. Leehans' DIB application, in the assessment of Ms. Leehan's SSI application, Dr. Levy performed a residual functional capacity assessment, finding that Ms. Leehans has no understanding and memory or concentration and persistence limitations. R. at 104. Dr. Levy found that Ms. Leehans has the following social interaction limitations: markedly limited ability to interact appropriately with the general public; not significantly limited in ability to ask simple questions or request assistance; moderately limited in ability to accept instructions and respond appropriately to criticisms from supervisors; moderately limited in ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and moderately limited in ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness because of her mood symptoms. R. at 105. Dr. Levy explained that Ms. Levy's ability to deal with coworkers would be somewhat reduced, but adequate to handle brief and superficial contact. Id.  Dr. Levy added that Ms. Leehans' ability to respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting. Id.  Dr. Levy also noted that Ms. Leehans should not interact with the public. Id.

mental condition is a long-term problem and not just a temporary set-back.'" Cole ex rel. Cole v. Barnhart, 288 F.3d 149, 152 (5th Cir. 2002) (quoting Leidler v. Sullivan, 885 F.2d 291, 292 (5th Cir. 1989)). In Cole, the Fifth Circuit explained that such a claimant is not required "to show a 12-month period of impairment unmarred by any symptom-free interval." Id. (quoting Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986)). The ALJ must consider whether an applicant with a serious mental impairment can "*hold* whatever job he finds for a significant period of time." Id. (quoting Leidler, 885 F.2d at 293) (emphasis in original).

Ms. Leehans also argues that the ALJ's decision is not supported by substantial evidence because the ALJ's recitation of the facts fails to mention Ms. Leehans' July 18, 2014, visit to the NMCH Emergency Department, nor does the ALJ discuss Ms. Leehans' August 27, 2014, visit to the NMCH Emergency Department complaining of recurrent suicidal ideation that had been getting worse.

Ms. Leehans submits that the ALJ's DIB decision should be set aside and this court should find that a period of disability was established in the period from March 12, 2014 through March 31, 2015. Ms. Leehans requests that the court remand the matter with instructions for the ALJ to consider whether medical improvement has been demonstrated in the period after Ms. Leehan's insured status expired.

The Commissioner argues that substantial evidence supports the ALJ's decision. The Commissioner cites the consultative examiner's November 20, 2015, report, where Ms. Leehans' thought process was concrete, she had no auditory or visual hallucinations, and she had no paranoid or persecutory delusions, although she "remains paranoid in general and does not like crowd[s]." R. at 498. The Commissioner cites the record of Ms. Leehans' January 15, 2015, visit to the St. Tammany Community Health Center  when, despite the notes referred to by Ms. Leehans above,

she was also reported to be non-psychotic, had no suicidal or homicidal ideation, and had a coherent and logical thought flow. R. at 531. The Commissioner also argues that Ms. Leehans responded positively to medication, citing her March 20, 2014, Greenbriar Behavioral Hospital discharge summary noting that she was tolerating her medications well and reporting an improvement in depression and anxiety, R. at 503; her December 29, 2015, encounter at the St. Tammany Community Clinic where Ms. Leehans followed up for medication management and reported no side effects or adverse drug reactions, and denied suicidal or homicidal ideation, delusions, and hallucinations, R. at 564; her April 5, 2016, encounter at the St. Tammany Community Clinic where it was noted that she was doing well, was taking her new medication and had no complaints, and she denied suicidal or homicidal ideation, delusions, or hallucinations, R. at 555; and her July 21, 2016, encounter at the St. Tammany Community Clinic where it was noted that she was tolerating medication well, R. at 546. The court notes that only one of the cited records was during the period when Ms. Leehans was insured for DIB.

The Commissioner adds that the ALJ pointed out that Ms. Leehans had not sought mental health treatment from July 2016 through February 2017, and that in February 2017, she presented as calm with a normal mood. R. at 535. At the same February 2017 appointment, it was noted that "she is not working-discussed resources if she is interested in working." R. at 537. The Commissioner points out that the ALJ incorporated a number of nonexertional limitations into the RFC and properly determined that Ms. Leehans was not disabled "at any time" between her alleged onset date and the date of the ALJ's decision.

In response to Ms. Leehans' suggestion that the ALJ should have found Ms. Leehans disabled for the period between March 21, 2014 through March 31, 2015, the Commissioner insists the evidence does not support such a conclusion. The Commissioner points out that in the July

2014 emergency room visit cited by Ms. Leehans, she reported a recent change in psychiatric medication. The Commissioner submits that the evidence of later normal mental examinations indicates that the issue of change in medication had resolved. The Commissioner seems to argue that the ALJ's failure to consider the July 18, 2014, and August 27, 2014, hospitalizations was non-prejudicial because the July 2014 record indicates the flare up of symptoms resulted from a change in medication. The Commissioner does not address how this argument applies to the August 2014 ER visit and possible inpatient hospitalization.

b. *Analysis*

The court finds notable that in assessing Ms. Leehans' DIB application through March 31, 2015, the state agency reviewing expert, Dr. Levy, found the evidence insufficient to opine as to Ms. Leehans' functionality. Unlike the ALJ, it appears from Dr. Levy's summary of the evidence that she reviewed and considered the July and August 2014 emergency room visits. However, although Dr. Levy referenced a March 11, 2014, emergency room visit, it appears that she did not have the Greenbriar records of inpatient hospitalization before her.

As the Commissioner points out, there is some evidence to support the ALJ's decision, including the Greenbriar discharge summary indicating that Ms. Leehans was tolerating her medication well and reporting an improvement in depression and anxiety with no hallucinations. When Ms. Leehans presented to the Slidell Memorial Hospital on January 1, 2015 with ear pain, no notes regarding her psychiatric condition were made and when she returned in February 2015 with complaints of ear pain, her behavior, mood, and affect were within normal limits. When Ms. Leehans treated at the St. Tammany Community Health Center on January 15, 2015, she was non-

psychotic, her thought flow was coherent and rational, and her attention demonstrated no abnormalities. The absence of medical records between September 2014 and December 2014 also indicates that Ms. Leehans' mental condition was not flaring up. Additionally, Dr. Shah's report indicates that Ms. Leehans was able to do well on the cognitive tests which assessed memory and understanding, concentration and attention, insight, and judgment.

Nonetheless, Dr. Shah's examination was performed in November 2015 and does not address the effects of Ms. Leehans' occasional experiences of hearing voices and having suicidal ideation on her ability to sustain employment at any time, let alone during the period before March 31, 2015. Further, at her January 2015 St. Tammany Community Health Center appointment, Ms. Leehans reported hearing voices, her mood was dysthymic, her attitude guarded, and she was nervous and fidgety. And while the Greenbriar records certainly show that Ms. Leehans' condition had improved, the summary also indicated that Ms. Leehans had a GAF of 50.

> The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job.

Givens v. Astrue, 251 F. App'x 561, 564 n. 1 (10th Cir. 2007) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000)) (internal citations omitted) (alterations in original).

In the case of mental impairments, a claimant's condition may be found to meet the 12-month durational requirement even if there are periods where the claimant is symptom free. Cole, 288 F.3d at 152. The ALJ must determine whether the claimant can hold a job for a significant period of time. Id. Because of this and in the absence of a medical opinion for the relevant period, the ALJ's failure to review and consider the July 2014 and August 2014 emergency room records

is problematic.[7] On this record, the court cannot find that the ALJ's conclusion is supported by substantial evidence. However, the court also cannot find that the record compels a finding that Ms. Leehans was disabled during the period between March 12, 2014, and March 31, 2015.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc.14) be GRANTED in part and DENIED in part; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 19) be DENIED. The matter should be remanded to the ALJ for further proceedings as recommended herein.  On remand, the ALJ should review and consider the records of Ms. Leehans' July and August 2014 hospitalizations, should endeavor to obtain the records of Ms. Leehans' August 2014 inpatient hospitalization, and should consider whether a medical source statement should be obtained regarding Ms. Leehans' limitations between March 12, 2014, and March 31, 2015. Then, the ALJ should reassess Ms. Leehans' RFC after considering all the evidence.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

---

[7] Of course, the ALJ's opinion did not concern just the period between March 12, 2014 and March 31, 2015. It extended through the date of decision on June 14, 2017 because it addressed Ms. Leehans' SSI application as well as her DIB application. It is not surprising that Ms. Leehans has abandoned the appeal of the denial of her SSI application. On that application, Dr. Levy's review of the evidence and assessment of Ms. Leehans' residual functional capacity provides a medical opinion that supports the ALJ's conclusions. In addition to this, the later evidence that Ms. Leehans' condition had improved with medication, as well as the findings Dr. Shah made after March 31, 2015, all supply substantial evidence to support the ALJ's conclusion on Ms. Leehans' SSI application. It is only when focused on the narrower 12-month DIB time frame, a time frame just now highlighted by Ms. Leehans' decision to abandon her SSI application, that we are left without medical opinion regarding Ms. Leehans' functional capacity and with fewer medical records indicating improvement with medication. In this vacuum, the ALJ's apparent failure to consider two records of emergency room visits reporting hearing voices and suicidal ideation is an error.

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 19th day of July, 2019.


_____
Janis van Meerveld
United States Magistrate Judge